**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

NAHOMIE MOISE,

        Plaintiff,

CASE NO.: _____

**PLAINTIFF DEMANDS A TRIAL BY JURY**

        v.

MOTHER'S MILK INC.
d/b/a SPECTRA BABY USA,

        Defendant.

_____/

## COMPLAINT

Plaintiff, NAHOMIE MOISE (hereinafter referred to as "Plaintiff" and/or "Ms. Moise"), through his counsel, Derek Smith Law Group, PLLC, hereby complains of Defendants MOTHER'S MILK INC. d/b/a SPECTRA BABY USA (hereinafter referred to as Defendant and/or "SPECTRA"), and alleges as follows:

### NATURE OF CASE

1. Plaintiff complains pursuant to pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* ("Title VII"); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); .and the Florida Civil Rights Act of 1992, Section 760.10 *et seq.* ("FCRA").

2. Furthermore, this action is to redress the Defendant's unlawful employment practices in violation of Title VII, Section 1981, and the FCRA following Defendant's retaliatory actions against Plaintiff for complaining of the ongoing harassment and discrimination, all leading to her unlawful termination.

## JURISDICTION AND VENUE

3. This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Florida Civil Rights Act of 1992, Section 760.10 *et seq.* ("FCRA").

4. This Court has jurisdiction of the federal law claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII and Section 1981.

5. This Court has jurisdiction of the state law claims herein pursuant to 29 U.S.C. § 1367, as this action involves state law causes of action arising from the same case or controversy as the federal claims herein.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon the fact Defendant was located in this judicial district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district. Plaintiff was employed by Defendant within Broward County, Florida. Additionally, the events took place in Broward County, Florida.

## PROCEDURAL REQUIREMENTS

7. Plaintiff has complied with all statutory prerequisites to file this action.

8. On or around October 07, 2020, Plaintiff dual filed her charge with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"), Charge number 510-2021-00174.

9. An EEOC filing automatically operates as a dual FCHR filing.

10. On or about May 13, 2021, the EEOC issued a right to sue letter, and this action is being commenced.

11. This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

## PARTIES

12. At all material times, Plaintiff is an individual female who is a resident of the State of Florida and resides in Broward County, Florida.

13. Defendant is a corporation duly authorized to exist under the laws of the State of Florida. Defendant maintains its principal place of business in Broward County, Florida and is subject to the jurisdiction of this Court.

14. Defendant is an employer as defined by all laws under which this action is brought and employs the requisite number of employees.

15. At all relevant times, Plaintiff was employed by Defendant and performed work for Defendant in Broward County, Florida.

## FACTUAL ALLEGATIONS

16. On or around November 2018, Defendant hired Plaintiff as "EDI Sales Coordinator."

17. In or around February 2019, Defendant promoted Plaintiff to "Logistics and Operations Manager" as a result of Plaintiff's exceptional performance in her role as EDI Sales Coordinator.

18. In or around December 2019, Plaintiff began to experience issues related to employee Victor Brown ("BROWN"), who openly intimidated her in the workplace in front of their coworkers.

19. By means of example, and not meant to be an exhaustive list, on at least one occasion, Plaintiff found BROWN alone, wielding a flashlight, within the Defendant's closed warehouse without permission or a legitimate purpose to be doing so.

20. Plaintiff Moise expressed her concerns regarding BROWN's behavior to THOMAS. In response, Plaintiff was told additional cameras would be installed around the warehouse and an investigation would occur. Upon information and belief, only the cameras were installed and no investigation into BROWN occurred.

21. Importantly, from that point on, THOMAS knew Plaintiff was weary of BROWN.

22. In or around late December 2019, during a holiday party, Plaintiff was approached by one of her subordinates, Ms. Sherley Massardo ("MASSARDO"). MASSARDO reported to Plaintiff that Maria Perdomo ("PERDOMO"), a colleague, sexually harassed and assaulted her at the holiday party by way of publicly groping her breasts and butt in the presence of other employees.

23. Importantly, at the time of the sexual battery, PERDOMO was employed by Defendant as an "Accounting Analyst & Human Resources Specialist."

24. MASSARDO sought Plaintiff's support in filing a complaint with the Human Resources Department. Plaintiff agreed to support and assist MASSARDO with raising her complaints to Human Resources.

25. The following day, Plaintiff contacted Human Resources on behalf of MASSARDO to report MASSARDO's sexual harassment and assault. Plaintiff Moise then physically accompanied MASSARDO to the Human Resources Department to assist MASSARDO in lodging her formal complaint of sexual harassment.

26. Rather than take prompt and immediate corrective action to ensure the unlawful harassment ceased, Defendant, by and through its agents within the Human Resources

Department, took on a tone of agitation and hostility towards Plaintiff and MASSARDO, and questioned each by stating, **"IT'S MARIA [PERDOMO]. ARE YOU REALLY SURE YOU WANT TO [FILE A COMPLAINT]?"**

27. Upon information and belief, employees within the Human Resources Department had already learned about Maria's inappropriate, public groping of MASSARDO at the holiday party.

28. In fact, MASSARDO's sexual harassment had become a joke within the Defendant's community. Both Plaintiff and MASSARDO overheard repeated jokes regarding the sexual harassment in the workplace.

29. Furthermore, during Plaintiff and MASSARDO's attempt to file a complaint with Human Resources, Defendant, by and through its employees, persisted in dissuading MASSARDO from filing her complaint by stating, **"[PERDOMO] WAS DRUNK."**

30. Eventually, upon Plaintiff and MASSARDO's insistence and persistence in the face of Defendant's dissuasion, Defendant formally filed MASSARDO's sexual harassment complaint against PERDOMO.

31. In early January 2020, just weeks after filing the complaint, Plaintiff and MASSARDO followed up with Human Resources Representative Nellie Thomas ("THOMAS") to discuss MASSARDO's sexual harassment complaint.

32. After Plaintiff and MASSARDO checked in regarding the status of the sexual harassment complaint, Defendant terminated PERDOMO.

33. Thereafter, Defendant, by and through the actions of its agents/employees/supervisors, began its retaliatory campaign against Plaintiff Moise and MASSARDO.

34. On a weekly basis from February 2020 to June 2020, THOMAS repeatedly asked Plaintiff to terminate MASSARDO or face termination herself. Each time, Plaintiff declined.

35. In or around February 2020, Plaintiff learned that MASSARDO had received the lowest raise increase within the company based on merit. Accordingly, Plaintiff complained to Human Resources that she suspected MASSARDO was being retaliated against for complaining of sexual harassment and assault.

36. On or about February 19, 2020, Plaintiff approached COO Samuel Levey ("LEVEY") and explicitly expressed her concern that MASSARDO was being targeted because of her sexual assault complaint. In turn, LEVEY promised to immediately investigate the situation. However, upon information and belief, LEVEY took no action to investigate and/or correct the reports of retaliation.

37. On or about February 14, 2020, after the former Warehouse Manager's departure, Defendant hired Plaintiff as "Warehouse Manager," in addition to Plaintiff's role as Logistics and Operations Manager. Plaintiff worked both positions up until her termination.

38. Shortly after transitioning to the Warehouse Manager role, Plaintiff's discomfort with BROWN escalated due to BROWN's continued suspicious behavior in the workplace, particularly the warehouse where Plaintiff would work alone in close proximity to BROWN.

39. At this time, Plaintiff complained to THOMAS and LEVEY about BROWN's inappropriate and questionable behavior.

40. Nevertheless, no action was taken to address BROWN's actions, and BROWN continued to intimidate Plaintiff. Importantly, THOMAS continued to permit BROWN to work

within the warehouse in close proximity to Plaintiff despite being fully aware of Plaintiff's complaints of harassment in retaliation against her for pursuing MASSARDO's sexual harassment complaint.

41. Despite the persistent retaliation and harassment from her colleagues, Plaintiff continued to strive to ensure she met all expectations of her superiors and supervisors, focusing her efforts into performing well under both jobs as efficiently as possible given the circumstances.

42. On or about February 18, 2020, BROWN unexpectedly and aggressively began shouting and berating Plaintiff for no apparent reason before quitting and walking off the job site. Upon information and belief, no action was ever taken to prevent and/or correct BROWN's intimidation and harassment.

43. On or around May 15, 2020, pursuant to Defendant's policy, Plaintiff submitted her performance evaluations for her direct reports to THOMAS for review.

44. Specifically, Plaintiff planned to issue MASSARDO a positive performance evaluation, as Plaintiff felt this represented a fair and accurate evaluation of MASSARDO's performance.

45. In or around June 2020, upon review of the performance evaluations, THOMAS approved all evaluations except MASSARDO's.

46. Specifically, THOMAS requested that Plaintiff change MASSARDO's performance evaluation so that it would be mostly negative.

47. In response, Plaintiff refused to change MASSARDO's evaluation and informed THOMAS of her suspicion that THOMAS's requests seemed connected to MASSARDO's sexual harassment complaint.

48. As a result of Plaintiff's refusal to participate in Defendant's retaliatory campaign against MASSARDO, Defendant, by and through the actions of its agents/employees/supervisors, then escalated its retaliatory campaign against Plaintiff.

49. Immediately following Plaintiff's refusal to alter MASSARDO's performance evaluation as requested by THOMAS, Defendant ceased assigning any and all work to Plaintiff and began openly referring to as "incompetent."

50. Notably, at no time before MASSARDO's performance evaluation had Plaintiff been informed of performance deficiencies in her work. In fact, Plaintiff's job duties expanded in March 2020, and Plaintiff had never received a negative performance evaluation or job criticism.

51. About two to three (2-3) weeks before Plaintiff's unlawful termination, Defendant posted a job advertisement for Plaintiff's exact position under a different title, "Warehouse Director." The job description and salary were identical to the positions Plaintiff then held.

52. On or about August 10, 2020, Defendant terminated Plaintiff's employment.

53. Defendant terminated Plaintiff in retaliation for reporting sexual harassment and discrimination.

54. Defendant has established a pattern and practice of retaliation.

55. As a result of the acts and conduct complained herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

56. Plaintiff has further experienced severe emotional and physical distress. Plaintiff suffers from increased stress and anxiety. Similarly, Plaintiff has trouble sleeping as a result of Defendant's conduct.

57. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

58. As Defendant's conduct has been malicious, willful, extreme and outrageous, and with full knowledge of the law, Plaintiff respectfully seeks all available damages including but not limited to emotional distress, loss wages, back pay, front pay, punitive damages, attorney's fees, costs, interest from Defendant.

59. Defendant's actions and conduct were intentional and intended to harm Plaintiff.

60. Plaintiff has presented factual allegations that would permit any reasonable jury to award damages.

61. At bottom, Defendants are liable for their reckless disregard for Plaintiff personal dignity and her civil right to pursue equal employment opportunity.

62. Plaintiff has suffered damages as a result of Defendant's unlawful employment practices.

## COUNT ONE
*Retaliation in Violation of Title VII*

54. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

55. Title VII prohibits employment discrimination against an individual for opposing or complaining about unlawful discrimination and/or harassment.

56. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified,

9

assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

57. Plaintiff opposed Defendant's discriminatory treatment by complaining to Defendant's Human Resources Department team about the unlawful sexual harassment and retaliation of MASSARDO by Perdomo.

58. By opposing Defendant's discrimination and retaliation, Plaintiff participated in a protected activity under Title VII's antiretaliation provision.

59. At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that violations of Title VII by Defendant's employees had occurred.

60. At all times relevant, the unlawful retaliation by Defendant's employees against Plaintiff in the terms and conditions of her employment occurred because she opposed a practice made unlawful by Title VII and would not have occurred but for that opposition.

61. At all material times, the employer exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

62. Following Plaintiff's opposition to PERDOMO' conduct and her support of MASSARDO's sexual harassment complaints to Defendant, the hostility toward Plaintiff Moise increased dramatically.

63. Defendant's Employees/Managers/Supervisors THOMAS and LEVEY retaliated against Plaintiff, including by ceasing all assignments of work to Plaintiff, referring to Plaintiff as "incompetent," assigning BROWN to work under Plaintiff despite her reasonable fear of him and his lack of job title with Defendant, threatening her with termination unless she issued an intentionally negative and false performance evaluation to MASSARDO, and

ultimately terminating Plaintiff after she refused to participate in Defendant's retaliatory campaign against MASSARDO.

64. Plaintiff opposed discriminatory conduct by Defendant's which is prohibited by Title VII when she complained to Defendants about PERDOMO's sexual harassment of a subordinate, MASSARDO, and refused to participate in Defendant's retaliatory campaign against MADASSARDO as described and set forth above.

65. Plaintiff's complaints involved Defendants' unlawful discriminatory and retaliatory actions and therefore constituted protected activity under Title VII.

66. Plaintiff herself complained of PERDOMO's sexual harassment of MADASSARDO to Defendant's Human Resources Department.

67. At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that Defendant's employees violated the law and her coworker's protected rights.

68. The materially adverse employment actions by Defendant were the result of Plaintiff's opposition to the discriminatory conduct to which her subordinate was subjected, in violation of Title VII.

69. The retaliatory treatment of Plaintiff included, but was not limited to, denying the assignment of work to Plaintiff after her clear opposition of Defendant's conduct, referring to Plaintiff as "incompetent," and wrongfully terminating her employment due to her report of discriminatory conduct in violation of Title VII.

70. As a result of Defendant's violations of The Civil Right Act of 1964, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to his family life; and other harm, pain and suffering, both tangible and intangible.

71. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

72. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

73. Plaintiff Moise has been damaged by the illegal conduct of Defendant.

## COUNT TWO
### *Retaliation in Violation of Florida Statute Section §760.10(7)*

81. Plaintiff realleges and incorporates, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

82. The FCRA prohibits retaliation against an employee for opposing conduct which would violate the terms of the FCRA. § 760.10(7).

83. Florida Statute Section 760.10(7) provides that "[i]t is an unlawful employment practice for an employer to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

84. Plaintiff opposed the discriminatory conduct of Defendant when she complained to THOMAS and LEVEY about the sexual harassment that MASSARDO was subjected to as described above.

85. At all times relevant, the unlawful retaliation by Defendant towards Plaintiff in the terms and conditions of her employment occurred because she opposed a practice made unlawful by the FCRA which would not have occurred but for that opposition.

86. At all times relevant, Defendant's Employees/Managers/Supervisors acted intentionally and with reckless disregard of Plaintiff's rights protected by the FCRA.

87. At all material times, the employer exhibiting discriminatory and harassing conduct against Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

88. Defendant's Employees/Managers/Supervisors against Plaintiff, including refusing to assign Plaintiff work, referring to Plaintiff to "incompetent," threatening to terminate Plaintiff, and ultimately causing Plaintiff's unlawful termination.

89. As a direct and proximate result of Defendant's intentional retaliatory conduct in violation of the FCRA, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and nonpecuniary losses.

90. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under state law.

91. Plaintiff Moise has been damaged by the illegal conduct of Defendant.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable before a jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgement against Defendant in an amount to be determined at the time of a trial plus interest, including but not limited to all emotional distress and economic damages, compensatory damages, liquidated damages, punitive damages, consequential damages, attorneys' fees and costs, and disbursement of actions, and for any such other relief that is statutorily permitted and as the Court deems just and proper.

Dated: August 10, 2021
      Miami, Florida

                                      **DEREK SMITH LAW GROUP, PLLC**
                                      701 Brickell Avenue, Suite 1310
                                      Miami, Florida 33131
                                      P.: (305) 946-1884

                                      _____
                                      Lauren Tobin, Esq.
                                      Fla. Bar No. 1024850
                                      lauren@dereksmithlaw.com

                                      *Attorney for Plaintiff Nahomie Moise*

14